HENTZ TRUCK LINE, INC., ROSEVILLE, MINNESOTA, and Joseph R. Jack, St. Paul, Minnesota, Applicants [Appellants Below] and Appellants,

v.

Richard ELKIN, Bruce Hagen, and Ben J. Wolf, as Members of the North Dakota Public Service Commission, Respondents [Respondents Below] and Appellees,

and

Lewis Truck Lines, Inc., and Oland Truck Line, Protestants [Respondents Below] and Appellees.

Civ. No. 9739.

Supreme Court of North Dakota.

June 20, 1980.

Kermit Edward Bye, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for applicants [appellants below] and appellants.

Daniel S. Kuntz, Asst. Commerce Counsel for Public Service Commission, Bismarck, for respondents [respondents below] and appellees.

Kip B. H. Erickson, of Van Osdel, Foss & Miller, Fargo, for protestants [respondents below] and appellees.

VANDE WALLE, Justice.

Hentz Truck Line, Inc. ("Hentz"), and Joseph R. Jack ("Jack") appeal from a judgment of the Burleigh County district court affirming the order of the Public Service Commission ("PSC") denying Hentz's application to sell Jack a special certificate of public convenience and necessity and revoking Hentz's certificate. We affirm.

Hentz held Special Certificate of Public Convenience and Necessity No. 355 which authorized the following:

"Transportation of general commodities, excluding therefrom the transportation of petroleum products in bulk, in tank vehicles, to, from and within the following zoned territory:

"Bound on the east by the Minnesota-North Dakota stateline; on the north by the north boundary of Township 132, Range 48, 49, 50, 51 and 52; on the west by the west Richland County line; on the south by the South Dakota-North Dakota state line."

In October 1978, Hentz and Jack filed with the PSC an application to sell the certificate by sale of all the capital stock of Hentz to Jack. The PSC issued a "Notice of Opportunity for Hearing" [1] and requests

---

1. Under Section 49–18–26, N.D.C.C., a certificate is transferable only upon approval by the Commission "after opportunity for hearing, giving notice to all interested parties; . . ."

Section 69–02–04—05 of the North Dakota Administrative Code provides, in part:

"In any proceeding in which the commission is authorized to act after opportunity for hearing, such opportunity shall be deemed to

for hearing were received from Lewis Truck Lines, Inc. ("Lewis"), and Oland Truck Line ("Oland").

In their requests for hearing, Oland and Lewis, which hold certificates in the same area as Hentz, protested the application and alleged "that the authority sought to be transferred is dormant and that service thereunder has been abandoned by the applicant, Hentz Truck Line, Inc." Copies of the Oland and Lewis protests and requests for hearing were mailed to Hentz and Jack. Pursuant to the requests for hearing from Oland and Lewis, the PSC issued a "Notice of Hearing" which provided, in pertinent part:

"REQUEST FOR HEARING in the above-entitled matter having been received by this Commission in response to our Notice dated October 26, 1978, from Lewis Truck Lines, Inc., Lisbon, North Dakota, and Arnold Oland, d/b/a Oland Truck Line, Lidgerwood, North Dakota, and the Commission having duly considered the same,

"NOW, THEREFORE, NOTICE IS HEREBY GIVEN that public hearing will be held thereon by the Public Service Commission . . . at which time and place interested parties may appear and offer relevant evidence on the following issues:

"1. Is the applicant seeking to purchase Special Certificate No. 355 fit, willing and able to render adequate public service?

"2. Has Hentz Truck Line, Inc. been actively engaged in the exercise of the authority contained in Special Certificate No. 355?

"3. Has Hentz Truck Line, Inc. unlawfully abandoned or failed to exercise any of the authority evidenced by Special Certificate No. 355?

"4. Should Special Certificate No. 355 be amended on grounds of abandonment or dormancy?

"5. Will the granting of the application unduly increase the cost of maintaining the highways concerned?

"6. What is the existing travel in the area covered by Special Certificate No. 355?

"7. What effect would the granting of the application have on other forms of transportation?

"8. What transportation facilities exist in the territory covered by Special Certificate No. 355?

"NOTICE IS HEREBY GIVEN that in the event there is evidence of dormancy or abandonment, the applicant-to-purchase should be prepared to present evidence on Public Convenience and Necessity at this hearing."

Following the hearing, at which Hentz, Jack, Oland, and Lewis appeared both in person and through counsel, the PSC issued its findings of fact, conclusions of law, and order denying the applications for sale by Hentz and purchase by Jack and revoking Special Certificate No. 355 held by Hentz. Hentz and Jack petitioned for a rehearing, which the PSC denied. Hentz and Jack appealed to the district court, which entered judgment affirming the decision of the PSC. Hentz and Jack now appeal the district court's judgment affirming the decision of the PSC.

■ On appeal from a district court decision involving an appeal from an administrative agency we review the decision of the agency rather than the decision of the district court. *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692 (N.D.1978). The standard of review in the Supreme Court is the same as the standard under which the district court reviews the decision. Sec. 28–32–21, N.D.C.C. That

have been afforded by service of notice of the application or other initial pleading or filing where the commission fixes a reasonable period of time within which any person desiring to be heard may file a protest or petition for a hearing. Upon the expiration of such period of time, in the absence of a protest or a request for hearing, the commission may forthwith dispose of the matter upon the basis of the pleading and other submittals and the studies and recommendations of the staff."

standard of review is prescribed by Section 28–32–19, N.D.C.C.[2]

## I

■ The first issue raised by Hentz and Jack is procedural, in that they allege that the notice given by the PSC was insufficient to advise them that the special certificate held by Hentz might be revoked. They contend that although the notice did set forth eight specific issues on which relevant evidence was to be offered, those eight issues dealt with the proposed transfer of the certificate from Hentz to Jack but did not deal with revocation of Hentz's existing authority under the certificate held by it. Hentz and Jack concede that the notice of hearing did specify that Jack, the applicant to purchase the certificate from Hentz, should be prepared to present evidence on public convenience and necessity in the event evidence of dormancy or abandonment was introduced. They further concede that while evidence of dormancy or abandonment might be useful in a determination not to grant the application to purchase, the hearing on that application could not be a vehicle for revocation of the authority itself. They argue that in revoking Hentz's certificate of authority after a hearing in which the foregoing notice was given the PSC has denied them due process of law.

Section 49–18–16, N.D.C.C., provides:

"The commission, at any time, for good cause, may suspend and, upon not less than five days' notice to the grantee of any certificate or temporary permit, and on opportunity to be heard, may revoke or amend any certificate or temporary permit."

Included in the notice were the issues of whether or not Hentz had unlawfully abandoned or failed to exercise any of the authority evidenced by its certificate and whether or not the certificate should be amended on grounds of abandonment or dormancy. Although the notice did refer to the possibility of amendment of the certificate it did not refer directly to the possibility of revocation.

Section 49–18–17, N.D.C.C., provided, at the time of the hearing before the PSC:

"DISCONTINUANCE OF SERVICE BY COMMON MOTOR CARRIER— ONLY BY ORDER OF COMMISSION.— No common motor carrier authorized by this chapter to operate shall abandon or discontinue any service established under the provisions thereof without an order of the commission."

Subsequent to the date of the hearing the Legislature amended Section 49–18–17 by the addition of the following sentence:

"Nonuser, plus inability to operate, refusal to accept business, or noncompliance with a proper commission order shall, in the discretion of the commission, constitute sufficient cause for revocation under section 49–18–16." 1979 N.D.Sess. Laws, Ch. 503, Sec. 4.

2. Section 28–32–19, N.D.C.C., provides:

"The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:
"1. The decision or determination is not in accordance with the law.
"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.
"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
"6. The conclusions and decision of the agency are not supported by its findings of fact.
"If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

Although the amendment by the Legislature in 1979 specifically provides that abandonment or discontinuance of service without order of the PSC is a ground for revocation of the certificate, this court several years earlier held that the certificate of a common motor carrier could be revoked under the provisions of Section 49–18–16 because of a cessation of operations and abandonment by the holder of the certificate. *In re Superior Service Company*, 94 N.W.2d 84 (N.D.1959). See also *Fargo Freight Truck. v. North Dakota Pub. Serv. Com'n*, 129 N.W.2d 368 (N.D.1964). Thus the amendment by the 1979 Legislature is a codification of law already established.

Hentz and Jack, however, argue that the procedure in *In re Superior Service Company* was different in that the PSC there received a buy-and-sell application but before that application was scheduled for hearing the PSC, upon receipt of informal complaints, issued an order requiring the holder of the certificate to show cause why the certificate should not be revoked because the operations thereunder had unlawfully been discontinued. There, after determining that the holder of the certificate had improperly discontinued service, the PSC revoked the certificate and did not hold a hearing on the buy-and-sell application. Hentz and Jack urge that such procedure should have been adopted in this instance and, because that procedure was not adopted, the PSC could not revoke the certificate.

Perhaps separate hearings would be desirable but we do not believe they are necessary. It is consistent and may well be a wise use of the time of the PSC as well as the interested parties to combine for hearing the issue of whether or not service under the certificate has been abandoned, in which case the certificate may be revoked, and the issue of whether or not to approve a buy-and-sell application if service under the certificate has not been abandoned. We see no conflict in combining those issues in one proceeding.

By their protests, Oland and Lewis directly raised the issue of abandonment of the certificate. The notice of hearing specifically raised as issues unlawful abandonment and amendment of the certificate because of abandonment. Additionally, the notice provided that in the event evidence of dormancy or abandonment was given, the applicant to purchase, Jack, should be prepared to present evidence on public convenience and necessity at the hearing.[3]

Dormancy or abandonment is a reason for revocation or amendment of the certificate. If the evidence indicated that only a portion of the certificate was abandoned, i. e., that Hentz had abandoned service in only a portion of the territory it was authorized to serve, the certificate could have been amended to delete that area from the territory to be served under the certificate. In this instance, as we will discuss later, the evidence indicated complete abandonment of service in the territory to be served. Therefore, an amendment deleting all the territory to be served from the certificate would be tantamount to a revocation. In *North State Tel. Co., Inc. v. Alaska Public Util. Comn.*, 522 P.2d 711 (Alaska 1974), the Alaska Supreme Court was faced with the issue of whether or not a notice of a particular hearing before the Alaska Public Utilities Commission was adequate for that Commission to revoke the certificate of the appellant, North State Telephone Co., Inc. In finding the notice adequate the Alaska Supreme Court stated:

"Although there are cases that go both ways on the issue, the modern trend in administrative pleading is to require simply that the parties be sufficiently apprised of the nature of the proceedings so that there is no unfair surprise. K. Davis, Administrative Law § 8.04 and § 8.05 (1958). Moreover, since the basic element to be satisfied is the opportunity to prepare one's case, the actual content of the notice is not dispositive. The question is whether the complaining party had sufficient notice and information to under-

---

**3.** Although evidence of dormancy and abandonment was introduced, neither Hentz nor Jack introduced any evidence as to public convenience and necessity at the hearing.

stand the nature of the proceedings. That is, unlike a formal complaint in a civil action, defects in administrative notice may be cured by other evidence that the parties knew what the proceedings would entail. K. Davis, *supra*, at p. 525, and cases cited therein." 522 P.2d at 714.

In *Kuhn v. North Dakota Public Service Commission*, 76 N.W.2d 171 (N.D.1956), this court considered the issue of the adequacy of a notice given by the PSC for a hearing which resulted in the rezoning of Kuhn's certificate. The court, in considering the sufficiency of the notice, stated:

"Taking the notice as a whole it is clear that the respondent, Kuhn, in this investigation for zoning his certificate was notified that he had to show that he had an outstanding, unlimited certificate of public convenience and necessity, authorizing state-wide operations and that he must show for what territory public convenience requires his services now and whether public convenience requires that he should serve points not in such territory.

"From the record made it appears that the respondent understood that. He presented some evidence not only on what territory he had served but which also would bear on the convenience and necessity for such service to continue.

"We hold the notice sufficient to inform the respondent, Kuhn, of the issues to be determined." 76 N.W.2d at 176.

In this instance the notice given specifically indicated abandonment would be an issue and Jack testified under cross-examination by counsel for Lewis and Oland that he understood dormancy and abandonment would be an issue. We cannot conclude that the notice was constitutionally defective because it failed to state, in specific words, that Hentz's certificate would be subject to revocation if it was found to be abandoned or dormant. As we have noted before herein, the real issue, that of abandonment, was well set forth in the notice. Hentz and Jack were given ample notice they would have to face the question of abandonment and that if abandonment ex-

isted the certificate could be amended. As we have also noted before, abandonment of the entire territory to be served under the certificate would make amendment meaningless and the only logical conclusion which Hentz and Jack could reach is that if the certificate were found to be abandoned in its entirety, it would be revoked.

Hentz and Jack have cited several cases which they claim support their position that the notice was inadequate. In *Luisi Truck Lines, Inc. v. Washington Util. & Tr. Com'n*, 72 Wash.2d 887, 435 P.2d 654 (1967), the Washington Supreme Court held that a prior determination that Luisi's certificate did not authorize him to haul canned goods was not, in a subsequent hearing, dispositive of the issue of whether Luisi could haul fresh fruits and vegetables only or whether he could also haul semiprocessed or processed fruits and vegetables other than canned. In the course of that opinion the Washington court indicated that a certificate constituted a property right which could be canceled, suspended, altered, or amended only upon a notice and hearing and that the notice would be insufficient to constitute due process of law unless it directed the certificate holder's attention to the fact that an issue to be determined at the hearing would be the cancellation, alteration, or amendment of the certificate.

We agree with the opinion of the Washington court. However, a notice that a hearing is to consider a certificate holder's authority to haul canned goods, a conclusion that the certificate holder cannot haul canned goods, and the extension of that conclusion to the hauling of other forms of fruits and vegetables without further hearing is vastly different from the situation we face here in that specific notice of the issue, i. e., abandonment, was given in this instance.

It is interesting to note that even in *Luisi*, the Washington court held the previous determination that Luisi had no authority to haul canned goods was res judicata because he had received notice that the issue was to be considered in that hearing. Following that rationale, even if we were to

agree with Hentz and Jack that they received no adequate notice that the certificate might be canceled, the result would still be that the issue of abandonment was res judicata because they received specific notice that abandonment was to be considered. Thus a conclusion that the PSC's order must be overturned for failure to give specific notice of revocation would be meaningless if the issue of abandonment was res judicata. It would be a mere formality for the PSC to give specific notice that the certificate would be subject to revocation because of abandonment and then at a hearing introduce its previous order finding that service under the certificate had been abandoned as being determinative of the issue. This is a strong indication that the real issue in the hearing before the PSC was abandonment and, if that was established, revocation was one of the expected results flowing therefrom.

In *Morris v. Public Service Commission*, 7 Utah 167, 321 P.2d 644 (1958), the Utah Supreme Court set aside an order of that State's Public Service Commission canceling a certificate because the notice was defective. However, in that instance the notice of hearing simply indicated a hearing would be held on the application by the buyer to assume the operating rights of the seller of the certificate. No mention was made in the notice that the issue of abandonment of the certificate by the seller would be considered. The Utah Commission concluded that because the certificate was inactive it should be canceled. The Utah court did hold that an order of an administrative body issued without notice to affected individuals is violative of due process and found that the notice given provided only that an application to assume the operating rights of an existing certificate holder was to be entertained by the Utah Commission. But in this instance the notice specifically provided that the issue of abandonment would be before the PSC. The Utah decision, because of its different factual basis, does not support the position of Hentz and Jack.

■ There is no doubt that due process of law requires notice of a hearing, notice of the general nature of the issues to be heard, and an opportunity to prepare and to be heard. *In Interest of M. L.*, 239 N.W.2d 289 (N.D.1976). We conclude the notice given in this instance was adequate to inform Hentz and Jack that abandonment of the certificate sought to be transferred was at issue and, if abandonment was found, that the certificate might be amended or, if abandonment was total, might be revoked.

## II

■ As their second issue Hentz and Jack assert that the PSC erred in finding that Hentz had abandoned or discontinued transportation services under the certificate. The PSC made the following findings pertinent to this issue:

"I

"That the Applicant to sell, Hentz Truck Line, Inc. (Hentz) presently leases an office-terminal in St. Paul, Minnesota and has no offices or terminals in the State of North Dakota. That Hentz owns no equipment, has no employees other than an agent working in the office in St. Paul, Minnesota. That Hentz has not regularly solicited traffic pursuant to Special Certificate No. 355 and has not advertised transportation service in the yellow-page section of State telephone directories over the last five years.

"II

"That Applicant to sell has transported 1599 shipments in interstate commerce from the 3rd day of January, 1977, through the 19th day of December, 1978. That the interstate shipments are interlines of interstate shipments pursuant to registration of Hentz's certificate with the Interstate Commerce Commission.

"III

"That the Applicant has transported 18 intrastate shipments in the last nine years, seven of those shipments being from 1970 to 1974, and has not transported a single shipment pursuant to Special

Certificate No. 355 since December 20, 1974."

The Commission made the following pertinent conclusions of law based on these findings:

"IV

"That the Applicant to sell has not been actively engaged in the exercise of its authority pursuant to Special Certificate No. 355 for at least five years.

"V

"That public convenience and necessity does not require nor is it dependent upon any common motor carrier service as authorized by Special Certificate No. 355.

"VI

"That Hentz Truck Line, Inc. unlawfully abandoned or discontinued transportation service pursuant to Special Certificate No. 355 contrary to Section 49–18–17 of the North Dakota Century Code, and that the application should be denied and Special Certificate No. 355 should be revoked.

"VII

"That this application should be denied and Special Certificate No. 355 should be revoked."

■ Hentz and Jack argue that as the holder of a special certificate Hentz was not required to furnish regular service. We agree. Section 49–18–01(7), N.D.C.C.,[4] defined "special common motor carrier" as follows:

"7. 'Special common motor carrier' shall mean a common motor carrier operating over irregular routes, not on schedule time, at the will and command of the shipper."

In *Eklund Brothers Transport, Inc. v. Thompson*, 146 N.W.2d 613 (N.D.1966), this court affirmed an order of the district court reversing a PSC order revoking a special certificate because it was dormant. The syllabus by the court in that decision reads, in part:

"3. Where a special common motor carrier certificate authorizes the transportation of water and crude oil in bulk to gas- and oil-drilling sites, and the record fails to disclose that there had been any demand made upon the holder for such service or that the holder had refused to render the service, failure to exercise the authority does not amount to nonuse. Where a common carrier is operating over irregular routes, not on schedule time, he must provide service only at the will and command of the prospective shipper.

"4. Nonuse by the holder of a special certificate authorizing nonscheduled service over irregular routes does not constitute dormancy or abandonment by such certificate holder, unless demand has been made upon the holder for service and such demand is refused."

The record in this instance does not reflect that there was a demand upon Hentz for service and that Hentz had refused such demand. We note, however, that in *Eklund* the president of the certificate holder was asked whether or not he was actively engaged in the solicitation of business and he answered that he was. In this instance the findings are that Hentz had not solicited traffic pursuant to his certificate and had not advertised transportation service in the area he was entitled to serve under his certificate, i. e., a portion of Richland County. Those findings are amply supported by the testimony in the record of the hearing before the PSC. The evidence further reveals that the primary and sole use of this certificate in the last four years preceding the hearing was for interstate shipments by "interlining" with other companies.[5] The

---

4. Subsection 7 of Section 49–18–01, N.D.C.C., has been recodified without change as subsection 6 of Section 49–18–01. See Section 1, Chapter 503, 1979 N.D. Sess. Laws.

5. In *Yellow Freight Systems v. Mich. Pub. Serv.*, 73 Mich.App. 476, 252 N.W.2d 495 (1977), the Michigan court in discussing "interlining," whereby the certificate holder acts as a substitute carrier on certain routes, stated:

decision in *Eklund* involves a factual situation in which business was actively solicited but no demands were made. Here, the factual situation reveals no solicitation of business on the part of the certificate holder and no demand for business.

In *Dan Dugan Transport Co. v. Maas Transport*, 275 N.W.2d 855 (N.D.1979), this court again had occasion to review an order of the PSC revoking a special common motor carrier certificate on the ground of abandonment. In that decision Chief Justice Erickstad, writing for the court, reviewed the *Eklund* decision, stating:

"We do not believe the decision holds that there must be a demand for services under all circumstances before an abandonment occurs. If a carrier is obviously incapable of rendering services to the public, it is unreasonable to expect the public to request services from such a carrier.

.    .    .    .    .

"We believe that a 'no demand for service—no abandonment' test, if applied under all circumstances, would permit a carrier to obtain the transfer of a nonused authority in contravention of Section 49–18–17, N.D.C.C., which provides that a carrier can abandon or discontinue service only upon approval of the PSC. See *Fargo Freight Truck. v. North Dakota Pub. Serv. Com'n.*, 129 N.W.2d 368 (N.D.1964). We do not believe that such a result was contemplated by the Legislature. We therefore hold that Maas' nonuse of authority, accompanied by its inability to operate, justified the PSC's conclusion that the certificate was abandoned and that this conclusion supports the decision of the PSC revoking the certificate." 275 N.W.2d at 858–859.

■ Hentz and Jack urge that although our decision in *Dan Dugan* clarifies the decision in *Eklund*, it does not alter the result in this case because in *Dan Dugan* there were detailed facts in evidence that

the certificate holder had a total inability to operate at all. We do not agree. The definition of a "special common motor carrier" contained in Section 49–18–01, N.D. C.C., is a "common motor carrier operating over irregular routes, not on schedule time, at the will and command of the shipper." A "common motor carrier of property" is defined in Section 49–18–01, N.D.C.C., to mean "any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle from place to place the property of others who may choose to employ him." Although a special common motor carrier is not required to operate on regular routes or on schedule time and need operate only at the will and command of the shipper, he nevertheless must hold himself out to the public as willing to undertake for hire the transportation of property of others who choose to employ him. The record before us is devoid of any attempt on the part of Hentz to hold itself out to the public in the area it is authorized to serve under the certificate. The evidence reveals that Hentz has no equipment, no terminal, no salesman, and no listed telephone number in its principal place of authority. Its only office is in St. Paul, Minnesota. It has no office in Richland County. A person in the area of service covered by the certificate wishing to use the facilities of Hentz would have difficulty in learning of its authority to transport and difficulty in demanding service if he did learn of that authority. There is more than adequate evidence in the record to sustain the PSC's findings that Hentz had abandoned or discontinued all transportation services authorized under its certificate.

The order of the Public Service Commission is affirmed and therefore the judgment of the district court is affirmed.

ERICKSTAD, C. J., and SAND and PAULSON, JJ., concur.

---

"We believe that merely providing an interline arrangement on authorized routes without turning over any intrastate cargo, can well justify a finding of discontinuance." 252 N.W.2d at 499. In this instance Hentz interlined on interstate routes but not intrastate routes.

PEDERSON, Justice, dissenting.

Although I agree with part II of the majority opinion on the question of whether or not an abandonment had occurred, I believe that holding a notice of possible amendment to be adequate to give due process notice of possible revocation establishes a bad precedent even for administrative proceedings. The district court judgment should be reversed and the determination of the PSC should be set aside and a new hearing required.